ASA W. HEATH, APPELLANT, v. LUTHER COLE, AS
   EXECUTOR, AND OTHERS, LEGATEES OF LYMAN HEATH,
   DECEASED, RESPONDENTS.

*Will—proof, as to due execution of.*

Although when a man is well and strong, a declaration made by a third person
   in his presence, that an instrument is his will, and a request by such person
   to the witnesses to sign it, may be assumed to be the acts of the testator; yet,
   where the testator is at the end of a sickness, which has lasted over eleven
   years; when he is within a few hours of his death, and very feeble, and able
   to speak but faintly, such assumption cannot be made, unless his adoption of
   the acts of such person be clearly proved.

APPEAL from a decree of the surrogate of the county of
Saratoga, admitting to probate an instrument alleged to be the last
will and testament of Lyman Heath, deceased. Probate of the
will was contested on the grounds: 1. That the said Lyman Heath
was not, at the time of the alleged execution of said instrument,
of sound mind and memory. 2. That the said instrument was pro-
cured by the fraud and undue influence of the said legatees, Luther
Cole and J. H. Davis. 3. That the said instrument was never
published or declared by the said Lyman Heath to be his last will
and testament.

*W. B. French*, for the appellant. There was not, under the
circumstances, a sufficient publication of the instrument. (2 R.
S., p. 63, § 35; *Lewis* v. *Lewis*, 11 N. Y., 220; *Rutherford* v.
*Rutherford*, 1 Den., 33; *Seymour* v. *Van Wyck*, 2 Sel., 120;
*Brown* v. *De Selding*, 4 Sand., 10; *Wilson* v. *Hetterick*, 2 Brad.,
427, 431; *Brinckerhoof* v. *Remsen*, 26 Wend., 325; *Ex parte
Beers*, 2 id., 163; *Hunt* v. *Mootrie*, 3 id., 322; *Barry* v. *Boyer*,
1 N. Y. S. C., 422; *Matter of Will of Wilson*, 2 Brad., 427;
*Abbey* v. *Christy*, 49 Barb., 276; *McSorley* v. *McSorley*, 2 Brad.,
188.) The party offering the paper for probate must show, affirma-
tively, a compliance with all the requirements of the statute.
(*Chaffee* v. *Baptist Mission Conven.*, 10 Paige, 85; *Matter of
Will of John Kellum*, 52 N. Y., 617, 519.) But if by the testi-
mony the court is left in doubt as to the execution of the will,

and is not convinced that the same was duly executed, it will reverse the decree of the surrogate and send the case to a jury to investigate. (*Howland* v. *Taylor*, 53 N. Y., 627 ; *Forman* v. *Smith*, 7 Lans., 443 ; *Reynolds* v. *Root*, 62 Barb., 250 ; *McKindley* v. *Lamb*, 56 id., 284 ; *Crolius* v. *Stark*, 64 Barb., 162 ; S. C., 7 Lans., 301.)

*J. W. Crane* and *L. B. Pike*, for the respondents.　No particular form of words is necessary to make the declaration, nor, indeed, is it necessary to say anything; but any positive act by him showing that testator desired the witness to understand from him that it was his will he was executing, and that he knew what he was executing, or any acquiesence in the act of another doing the same office, is an effectual declaration by testator. (*McDonough* v. *Laughlin*, 20 Barb., 244; *Gilbert, ex'r.* v. *Knox et al.*, 52 N. Y., 125; *Peck* v. *Cary*, 27 N. Y., 9; *Coffin et al.* v. *Coffin*, 23 N. Y., 9; *Brinkerhoff et al.* v. *Remsen et al.*, 8 Paige, 488; *Remsen* v. *Brinkerhoff*, 26 Wend., 324.)

LEARNED, P. J.:

At the time when the testator signed the will he was very feeble; he did not speak aloud much; and, in fact, was near his end. The will was signed about noon, and he died about 11 o'clock at night.　When it was signed, the widow testifies that the inside of his hands was purple.

Holden, who drew the will, sat by the window, about eight or ten feet from the dying man.　Davis, the other subscribing witness, stood by Heath's bedside.　Heath stated his age aloud, and Holden drew the beginning of the will.　All the items of the will were written by Holden, at the dictation of Davis, who stated aloud to Holden what Heath told him; Heath's words were not audible to Holden.

When the instrument was drawn, Holden took it to the bedside of Heath, read it over to him, and asked him if it was all right, and he said it was.　Nothing more was said by Heath, until he signed.　They got a board for him to sign on.　Davis took hold of his shoulders and raised him up, and he signed.　Holden does not recollect of Heath's saying anything after he had finished

writing the will, except that the will was all right, after Holden read it to him.    He testifies that he said to Davis that it would be necessary to have two witnesses; that Davis communicated it to Heath, and said that Heath wanted them to sign as witnesses. He cannot testify that he heard Heath say this; he heard no reply from Heath to Davis in regard to it; he says that there was no publication of the will, except his reading it to Heath, and Heath's saying it was all right.

Davis, the other witness, testifies in regard to the execution, that after Holden read the will to Heath, Holden asked him if that was as he wanted it, and he said, yes. He further testifies that he asked Heath whom he would have for witnesses, and he said, I want you and Holden. He further testifies to the signing substantially in accordance with Holden's testimony. In another part of his testimony, he says: "Holden read the will, and I heard it read; I believe that he knows, and I can't say positively that he knew and understood the provisions of the will; he made no remark while the will was being read; and after its being read, Mr. Holden asked him if it was all right, and as he wanted it, and he said it was; I can't say these were the exact words used by either, but it was the substance or import."    The same witness testifies that, on the morning of the day Heath told him he wanted he should go for Holden to draw his will, and the witness went and brought him.

The widow of the deceased was present at the execution.    She testifies that Heath said nothing in her presence about that being his will; that he did not appear to pay much attention to what Holden was doing, or Davis saying; that he had a very sinking spell while they were drawing the paper, and she thought he was breathing his last.    Otherwise, witness testifies to his existing weakness.

Emeline Woodcock testifies, that on Tuesday before Heath died he told her they had been hounding him to make a will against his wishes; but he should make no will.

Holden testifies that he cannot say that, when he was reading the will to Heath, Heath was strong enough to follow him in the reading of the will from its commencement to its close, with close attention, and so as fully to comprehend all its provisions;

or that he had strength of mind and body sufficient to remember the amount of his property, and the condition of all his relations to him.

"The knowledge that the instrument which the witnesses are called upon to attest is a will must be communicated to them by the testator at the time of his subscription." (*Gilbert* v. *Knox*, 52 N. Y., 125 at 128.) It is apparent that, in considering the question whether that was done in the present case, we must bear in mind the testator's condition. When a man is in full health and strength, with all his senses in vigor, whatever is said for him and in his presence, may, properly and without danger, be taken to be his act. The declaration that the instrument is the testator's will, and the request to witnesses to sign, may be made by another, under such circumstances, that they are plainly adopted by the testator and become his acts. But, when a man is feeble, and able to speak but faintly, at the very last of a sickness which has lasted eleven years, and within a few hours of his death, then it is necessary to examine more carefully what takes place before him. It will not answer then to assume, without some clear proof, that he adopts the acts of those about him, who pretend to speak for him. In his feeble condition he may be unable to express his dissent, and it is unsafe to take his silence as acquiescence.

In the present case, so far as Holden is concerned, all that he can say is that he read the instrument to the testator. He does not say whether he read the attestation clause. He asked the testator if it was all right, and he said it was. The testator did not, nor did any one in his presence, state that the instrument was his will. This was all that he heard the testator say. Davis said that Heath wanted them to sign. But Holden did not hear Heath say this, or hear any reply to Davis' remark to Heath.

The other witness (Davis) is a legatee under the will. His evidence is to the same effect, and he adds that Heath told him that he wanted Holden and himself for witnesses, and that Heath sent him in the morning for Holden to draw his will.

But to neither of these witnesses is there a statement made by Heath that the instrument is his will. And this is a most important matter. The provision is intended to protect men in just such cases as this — men *in extremis*, almost too feeble to have a clear

idea of their wishes, and ready, in bodily and mental weakness, to say that anything is right which a friend reads to them. In such cases there should be an unquestionable statement of the nature of the instrument, and an unquestionable request to the witnesses.

In the case of *Gilbert* v. *Knox*, above referred to, nothing is said of the condition of the testator, except that it was conclusively established that he knew the character of the instrument. The will was executed twelve years, the last codicil two years, before his death.

So in *Peck* v. *Cary* (27 N. Y., 9), the will was executed at a banking house, and the testator was about to go sea. He must have been in full possession of his powers. And so, also, in *Thompson* v. *Stevens*, briefly reported in (62 N. Y., 634), there could have been no question as to the full knowledge by the testatrix of the nature of the instrument, or of her stating this knowledge to the witnesses, or of her request to them.

There can be no doubt of the general principle, that the proponents can establish a valid execution only by showing a full compliance with all the provisions of the statute. (*Lewis* v. *Lewis*, 11 N. Y., 220.) Nor can there be any question what the provisions are. The doubt must be whether the testator has so acted that we can say that he requested the witnesses to sign, and whether by words or otherwise he expressed to them the fact that the instrument was his will. And when we consider Heath's feeble and exhausted condition, his weakness of body and mind, such that one of the subscribing witnesses will not testify that he could comprehend the will, and the other cannot say that he understood it, when we see that he did not himself declare the instrument to be his will, or request the witnesses to sign it, we cannot hold that the acts which were done in his presence were so adopted by him as to make a valid request or declaration.

The decree of the surrogate should be reversed; issues to be tried by a jury ; costs to abide the event.

Present — LEARNED, P. J., BOARDMAN and TAPPAN, JJ.

Decree of surrogate reversed ; issues to be settled and tried by a jury ; costs to abide the event.